No. 22-11182-JJ

_____

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

_____

MANUEL BALBIN,

*Plaintiff-Appellee*,

v.

OFFICER ALEXIS JOHNSON,

*Defendant-Appellant.*

_____

On Appeal from the United States District Court
for the Southern District of Florida

No. 21-cv-22712-DMM

_____

# APPELLANT'S INITIAL BRIEF

_____

GERALDINE BONZON-KEENAN
Miami-Dade County Attorney
111 N.W. 1st Street, Suite 2810
Miami, Florida 33128
Telephone: (305) 375-5151

Anita Viciana
Assistant County Attorney
*Attorney for Defendant-Appellant*
*Officer Alexis Johnson*

**No. 22-11182-JJ**
**Manuel Balbin v. Alexis Johnson**

**Certificate of Interested Persons and**
**Corporate Disclosure Statement**

Pursuant to Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Rule 26.1-1, Defendant-Appellant Alexis Johnson hereby certifies that the following persons and entities may have an interest in the outcome of this case:

1. Balbin, Manuel, *Plaintiff-Appellee*

2. Johnson, Alexis, *Defendant-Appellant*

3. Matthewman, William, *United States Magistrate Judge*

4. Middlebrooks, Donald M., *United States District Judge*

5. Miami-Dade County

6. Miami-Dade County Attorney's Office

7. Viciana, Anita, *Attorney for Defendant-Appellant*

_s/ Anita Viciana_____
Anita Viciana
Assistant County Attorney

C-1 of 1

## Statement Regarding Oral Argument

Appellant respectfully requests oral argument. Appellant believes oral argument will assist the Court in finding that the district court erred in denying qualified immunity to a correctional officer on an inmate's retaliation claim based on the district court's unprecedented finding that the inmate engaged in constitutionally protected speech under the First Amendment by entering a "not guilty" plea in a criminal action. The relevant legal landscape does not support a finding that such a right exists today, much less that it was clearly established in November 2020. Given the importance of qualified immunity, particularly for correctional officers haled into court on inmate claims of retaliation, oral argument may be valuable here.

OFFICE OF COUNTY ATTORNEY, MIAMI-DADE COUNTY
TELEPHONE (305) 375-5151

# Table of Contents

**Page**

Certificate of Interested Persons and Corporate Disclosure Statement ................C-1

Statement Regarding Oral Argument ........................................................................i

Table of Contents ....................................................................................................ii

Table of Citations ...................................................................................................iii

Jurisdictional Statement ..........................................................................................1

Statement of the Issues ...........................................................................................2

Statement of the Case .............................................................................................3

    I.    Statement of the Facts and Course of Proceedings and Dispositions .......3

    II.   Standard of Review ........................................................................4

Summary of the Argument .......................................................................................6

Argument ................................................................................................................8

  I. Officer Alexis Johnson Is Entitled To Qualified Immunity On Plaintiff's
   First Amendment Retaliation Claim ...............................................................8

    A. Officer Johnson Was Acting Within Her Discretionary Authority ....10

    B. Because Plaintiff Did Not Engage in Constitutionally Protected
      Speech, Plaintiff Cannot Establish a Constitutional Violation ..........13

      1. An Inmate's Criminal Plea Is Not Constitutionally Protected
         Speech That Can Form The Basis of a First Amendment
         Retaliation Claim .......................................................................16

OFFICE OF COUNTY ATTORNEY, MIAMI-DADE COUNTY
TELEPHONE (305) 375-5151

C. Plaintiff Cannot Overcome Officer Johnson's Entitlement to Qualified Immunity Because Plaintiff Cannot Show a Right That Was Clearly Established at the Time ................................................21

Conclusion ................................................................................................28

Certificate of Compliance ........................................................................29

Certificate of Service ...............................................................................30

OFFICE OF COUNTY ATTORNEY, MIAMI-DADE COUNTY
TELEPHONE (305) 375-5151

## Table of Citations

**Cases**                                                          **Page(s)**

*Adams v. Rice*,
40 F.3d 72 (4th Cir. 1994) ......................................................15

*Alcocer v. Mills*,
  906 F.3d 944 (11th Cir. 2018) ............................................9, 21

*Alexander v. Univ. of N. Fla.*,
  39 F.3d 290 (11th Cir. 1994) ....................................................8

*Alves v. Bd. Of Regents of the Univ. Sys. Of Georgia*,
  804 F.3d 1149 (11th Cir. 2015) ..............................................17

*Am. Dental Ass'n v. Cigna Corp.*,
  605 F.3d 1283 (11th Cir. 2010) ................................................5

*Ashcroft v. al-Kidd*,
  563 U.S. 731 (2011) ..................................................................8

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ..................................................................5

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 ......................................................................4, 13

*Bennett v. Hendrix*,
  423 F.3d 1247 (11th Cir. 2005) ..............................................13

*Boxer X v. Harris*,
  437 F.3d 1107 (11th Cir. 2006) ..............................................17

*Bristol v. Queens Cnty.*,
  No. CV095544JFBAKT, 2018 WL 5077166 (E.D.N.Y. Mar. 30, 2018) ............19

*Carruth v. Bentley*,
  942 F.3d 1047 (11th Cir. 2019) ..........................................................................10

*Carter v. Allen*,
  762 F. App'x 827 (11th Cir. 2019) ......................................................................17

*City & County of San Francisco v. Sheehan*,
  135 S. Ct. 1765 (2015) .........................................................................................9

*Coffin v. Brandau*,
  642 F.3d 999 (11th Cir. 2011) .............................................................................24

*Colon v. Coughlin*,
  58 F.3d 865 (2d Cir. 1995) ..................................................................................14

*Connick v. Myers*,
  461 U.S. 138 (1983) .............................................................................................17

*Corbitt v. Vickers*,
  929 F.3d 1304 (11th Cir. 2019) ...........................................................................23

*Crocker v. Beatty*,
  995 F.3d 1232 (11th Cir. 2021) ...........................................................................25

*Dalrymple v. Reno*,
  334 F.3d 991 (11th Cir. 2003) .............................................................................8

*Davis v. Jackson*,
  No. 15-CV-5359 (KMK), 2018 WL 358089 (S.D.N.Y. Jan. 8, 2018) ................19

OFFICE OF COUNTY ATTORNEY, MIAMI-DADE COUNTY
TELEPHONE (305) 375-5151

*Dawes v. Walker*,
    239 F.3d 489 (2d Cir. 2001) ..................................................................15

*District of Columbia v. Wesby*,
    138 S. Ct. 577 (2018)...................................................... 22, 27

*Echols v. Lawton*,
    913 F.3d 1313 (11th Cir. 2019) ...................................... 16, 26, 27

*Estate of Cummings v. Davenport*,
    906 F.3d 934 (11th Cir. 2018) ......................................................8, 11

*Flaherty v. Coughlin*,
    713 F.2d 10 (2d Cir. 1983) ...................................................15

*Foy v. Holston*,
    94 F.3d 1528 (11th Cir. 1996) ................................................8

*Gaines v. Wardynski*,
    871 F.3d 1203 (11th Cir. 2017) .............................................24

*GJR Investments, Inc. v. County of Escambia, Fla.*,
    132 F.3d 1359 (11th Cir. 1998) .............................................24

*Hadley v. Gutierrez*,
    526 F.3d 1324 (11th Cir. 2008) .............................................23

*Hannan v. City of Philadelphia*,
    306 F. App'x 735 (3d Cir. 2009) ............................... 18, 19, 25

*Harbert Int'l, Inc. v. James*,
    157 F.3d 1271 (11th Cir. 1998) .................................... 10, 12

OFFICE OF COUNTY ATTORNEY, MIAMI-DADE COUNTY
TELEPHONE (305) 375-5151

*Holloman ex rel. Holloman v. Harland*,
  370 F.3d 1252 (11th Cir. 2004) .............................................................. 10, 11, 13

*Hope v. Pelzer*,
  536 U.S. 730 (2002) ...................................................................................8

*Howard v. Gee*,
  538 F. App'x 884 (11th Cir. 2013) ......................................................... 11

*Hudson v. Palmer*,
  468 U.S. 517 (1984) ............................................................................ 12, 15

*Jones v. Nichols*,
  639 F. App'x 433 (9th Cir. 2016) .......................................................... 20

*Jones v. Nichols*,
  No. 12CV1039 BTM BLM, 2014 WL 5171541 (S.D. Cal. Oct. 14, 2014) ......... 20

*Lewis v. City of West Palm Beach*,
  561 F.3d 1288 (11th Cir. 2009) ............................................................ 22

*Maddox v. Stephens*,
  727 F.3d 1109 (11th Cir. 2013) ...............................................................8

*Marsh v. Butler Cnty., Ala.*,
  268 F.3d 1014 (11th Cir. 2001) ................................................................5

*Melton v. Abston*,
  841 F.3d 1207 (11th Cir. 2016) ............................................................ 24

*Merricks v. Adkisson*,
  785 F.3d 553 (11th Cir. 2015) .............................................................. 24

vii

*Miller v. Lucas*,
  No. 3:16-CV-01947, 2018 WL 4441534 (M.D. Pa. July 20, 2018).............. 19, 20

*Mitchell v. Forsyth*,
  472 U.S. 511 (1985) ................................................................................5

*Moore v. Pederson*,
  806 F.3d 1036 (11th Cir. 2015)................................................... 23, 24, 26

*Moton v. Walker*,
  545 F. App'x 856 (11th Cir. 2013).......................................................11

*Moulds v. Bullard*,
  345 F. App'x 387 (11th Cir. 2009)............................................... 14, 20

*Oliver v. Fiorino*,
  586 F.3d 898 (11th Cir. 2009)..............................................................23

*Pearson v. Callahan*,
  555 U.S. 223 (2009) ................................................................. 9, 21, 22

*Piazza v. Jefferson County*,
  923 F.3d 947 (11th Cir. 2019)..............................................................9

*Priester v. City of Riviera Beach*,
  208 F.3d 919 (11th Cir. 2000)............................................................24

*Reichle v. Howards*,
  566 U.S. 658 (2012) ................................................................. 22, 27

*Rich v. Dollar*,
  841 F.2d 1558 (11th Cir. 1988).........................................................11

OFFICE OF COUNTY ATTORNEY, MIAMI-DADE COUNTY
TELEPHONE (305) 375-5151

*Saucier v. Katz,*
    533 U.S. 194 (2001) ...............................................................................9

*Scott v. Harris,*
    550 U.S. 372 (2007) ...............................................................................1

*Smith v. Mosley,*
    532 F.3d 1270 (11th Cir. 2008) ................................................... 14, 21

*St. George v. Pinellas Cnty.,*
    285 F.3d 1334 (11th Cir. 2002) ...........................................................4

*Taylor v. Fischer,*
    841 F. Supp. 2d 734 (W.D.N.Y. 2012) ..............................................19

*Thomas ex rel. Thomas v. Roberts,*
    323 F.3d 950 (11th Cir. 2003) ..............................................................9

*Vann v. City of Southaven, Mississippi,*
    884 F.3d 307 (5th Cir. 2018) ..............................................................25

*Wade v. United States,*
    13 F.4th 1217 (11th Cir. 2021) ..................................................... 27, 28

*White v. Pauly,*
    137 S. Ct. 548 (2017) ...........................................................................27

*Woods v. Smith,*
    60 F.3d 1161 (5th Cir. 1995) ..............................................................14

## <u>Statutes</u>

28 U.S.C. § 1291 .......................................................................................1

OFFICE OF COUNTY ATTORNEY, MIAMI-DADE COUNTY
TELEPHONE (305) 375-5151

28 U.S.C. § 1331 ....................................................................................1

42 U.S.C. § 1983 ................................................................. 1, 3, 16, 25

## Rules

Eleventh Circuit Rule 26.1-1 ...............................................................1

Fed. R. App. P. 26.1 ............................................................................1

Fed. R. App. P. 32(a)(5)......................................................................29

Fed. R. App. P. 32(a)(7)(B) ...............................................................29

Fed. R. App. P. 32(f).........................................................................29

## Jurisdictional Statement

The district court had subject matter jurisdiction under 28 U.S.C. § 1331 because Plaintiff alleged a violation arising under 42 U.S.C. § 1983 and the First Amendment to the U.S. Constitution.

This Court has jurisdiction pursuant to 28 U.S.C. § 1291. An interlocutory order denying qualified immunity is immediately appealable. *See Scott v. Harris*, 550 U.S. 372, 376 n.2 (2007) ("[A]n order denying qualified immunity is immediately appealable even though it is interlocutory.").

The appeal is timely because the order denying Appellant's motion to dismiss based on qualified immunity was entered on March 29, 2022 (Doc 58)[1], and the Notice of Appeal was filed on April 12, 2022 (Doc 61).

---

[1] Doc 58 refers to docket entry 58 in the district court. The references throughout this brief will follow this convention.

1

## Statement of the Issues

1. Whether the district court erred in finding that an inmate has engaged in constitutionally protected speech, for the purposes of a First Amendment retaliation claim, because he entered a "not guilty" plea in a criminal action.

2. Whether, assuming an inmate engages in constitutionally protected speech by entering an "not guilty" plea in a criminal action, the district court nevertheless erred in denying qualified immunity on an inmate's retaliation claim in the absence of prior caselaw clearly establishing such a right.

OFFICE OF COUNTY ATTORNEY, MIAMI-DADE COUNTY
TELEPHONE (305) 375-5151

**Statement of the Case**

I.    *Statement of the Facts and Course of Proceedings and Dispositions*

Plaintiff, Manuel Balbin ("Balbin"), an inmate currently in the custody of the Florida Department of Corrections, has brought a First Amendment retaliation claim against correctional officer Alexis Johnson, in her individual capacity, pursuant to 42 U.S.C. section 1983. Specifically, Balbin alleges that on November 22, 2020, when he was in the custody of the Miami-Dade Corrections and Rehabilitation Department awaiting resentencing on his felony charges, Officer Johnson retaliated against him, in violation of his First Amendment rights, by disposing of his property after he had "beaten" a misdemeanor charge for indecently exposing himself to Officer Johnson. Doc 1, Pg 14-16.[2]

Officer Johnson moved to dismiss Balbin's claim based on qualified immunity, arguing Balbin had not satisfied the first prong of a retaliation claim because he had not engaged in constitutionally protected speech by "beating" a criminal charge, and that, as a result, his Complaint failed to even state a claim for retaliation under the First Amendment, much less establish the violation of a clearly established right. Doc 37, Pg 7-10. Balbin responded to the motion to dismiss, asserting that he had engaged in constitutionally protected speech when he pled "not

---

[2] Doc 1 refers to docket entry 1 in the district court. *See supra* at 1 n.1. The page numbers referenced follow the pagination given by the district court's electronic case filing system.

3

guilty" in the criminal action. Doc 54, Pg 3-5. Officer Johnson filed a reply, noting the complete dearth of case law supporting Plaintiff's position that his entry of a criminal plea is "constitutionally protected speech" that satisfies the first prong of a retaliation claim. Doc 56, Pg 1-5.

The district court found Officer Johnson was not entitled to qualified immunity on Balbin's retaliation claim. Doc 58. The district court found that Plaintiff's "invo[cation of] his right to plead not guilty . . . sufficiently alleges acts of constitutionally protected speech under the First Amendment." Doc 58, Pg 7. The district court further found Officer Johnson was not entitled to qualified immunity because Plaintiff had "demonstrate[d] his rights were clearly established by pointing to a 'broader, clearly established principle.'" Doc 58, Pg 14. This appeal followed. Doc 61.

## II.    Standard of Review

The district court's denial of a motion to dismiss based on qualified immunity is reviewed *de novo*. *See St. George v. Pinellas Cnty*., 285 F.3d 1334, 1337 (11th Cir. 2002). Review is "limited to the four corners of the complaint." *Id.* Factual allegations in complaint must be accepted as true, but not "legal conclusion[s] couched as a factual allegation[s]." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

The Court should "1) eliminate any allegations in the complaint that are merely legal conclusions; and 2) where there are well-pleaded factual allegations, 'assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). The complaint must allege facts that are not merely consistent with liability but that allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

"A complaint is also subject to dismissal under Rule 12(b)(6) when its allegations—on their face—show that an affirmative defense bars recovery on the claim." *Marsh v. Butler Cnty., Ala.*, 268 F.3d 1014, 1022 (11th Cir. 2001). "'Unless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery.'" *Id.* (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)).

## Summary of the Argument

It was not clearly established in November of 2020 that an inmate engages in constitutionally protected speech under the First Amendment by filing a "not guilty" plea in a criminal action. Far from it. Even today, it is not clearly established in the Eleventh Circuit—or any circuit—that an inmate can state a claim for retaliation by alleging that he engaged in constitutionally protected activity by entering a "not guilty" plea in a criminal case.

In denying qualified immunity to Officer Johnson, the district court erred twice. First, the district court erred by finding that inmate Balbin stated a claim for retaliation where he alleged that he engaged in "constitutionally protected speech" by entering a "not guilty" plea in a criminal action. Second, the district court erred in finding that such a claim for retaliation was clearly established based on broader, clearly established principles, despite the Supreme Court's repeated caution not to define clearly established law at a high level of generality.

Officer Johnson is entitled to qualified immunity on Balbin's retaliation claim. Balbin's allegation that he engaged in constitutionally protected speech by pleading "not guilty" in a criminal action does not satisfy the first prong of the retaliation analysis. And even if this Court were to find that it does, Officer Johnson is nevertheless entitled to qualified immunity here because such a right was not clearly established at the time of the incident.

OFFICE OF COUNTY ATTORNEY, MIAMI-DADE COUNTY
TELEPHONE (305) 375-5151

Ultimately, Balbin cannot satisfy either prong of the qualified immunity analysis. Even taking his allegations as true, he does not establish that a constitutional violation occurred, much less one that violated a clearly established right.

The district court's order erred at both steps of the qualified immunity analysis, and its holding, which allows inmates to claim that their entry of a "not guilty" plea in a criminal action satisfies the requisite engagement in constitutionally protected speech for a retaliation claim, would give grounds for inmates to shoehorn almost any adverse action into a First Amendment retaliation claim. Taking Balbin's allegations as true, he has, at most, alleged a state law claim for unlawful conversion of property. He has not stated a claim for retaliation under the First Amendment, and Officer Johnson is entitled to qualified immunity.

OFFICE OF COUNTY ATTORNEY, MIAMI-DADE COUNTY
TELEPHONE (305) 375-5151

**Argument**

## I.    Officer Alexis Johnson Is Entitled To Qualified Immunity On Plaintiff's First Amendment Retaliation Claim

"Qualified immunity protects government officials performing discretionary functions from suits in their individual capacities unless their conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Dalrymple v. Reno*, 334 F.3d 991, 994 (11th Cir. 2003) (quoting *Hope v. Pelzer*, 536 U.S. 730, 739 (2002)). The "'central idea'" of qualified immunity "'is this pragmatic one: officials can act without fear of harassing litigation only when they can reasonably anticipate—*before* they act or do not act—if their conduct will give rise to damage liability for them.'" *Maddox v. Stephens*, 727 F.3d 1109, 1120 (11th Cir. 2013) (quoting *Foy v. Holston*, 94 F.3d 1528, 1534 (11th Cir. 1996)) (emphasis in original).

"The 'breathing room' afforded by qualified immunity is generous; . . . 'it protects all but the plainly incompetent or those who knowingly violate the law.'" *Estate of Cummings v. Davenport*, 906 F.3d 934, 940 (11th Cir. 2018) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011)). For that reason, this Court has explained that "qualified immunity for government officials is the rule, liability and trials for liability the exception." *Alexander v. Univ. of N. Fla.*, 39 F.3d 290, 291 (11th Cir. 1994).

Because Officer Johnson was acting within her discretionary authority (*see infra* Section I.A), Balbin bears the burden to show that Officer Johnson is not entitled to qualified immunity. *See Alcocer v. Mills*, 906 F.3d 944, 951 (11th Cir. 2018) ("Once the official makes that showing, the burden shifts to the plaintiff to demonstrate that qualified immunity is inappropriate."). To carry that burden, Plaintiff must make two showings: first, that Officer Johnson violated a constitutional right and second, that such a constitutional right was clearly established at the time of this incident. *See City & County of San Francisco v. Sheehan*, 135 S. Ct. 1765, 1774 (2015); *see also Saucier v. Katz*, 533 U.S. 194, 200 (2001).[3] The Court may consider the two prongs of this analysis in any order. *See Pearson v. Callahan*, 555 U.S. 223, 236-37 (2009). "[A]n official is entitled to qualified immunity if the plaintiff fails to establish either." *Piazza v. Jefferson County*, 923 F.3d 947, 951 (11th Cir. 2019).

Officer Johnson is entitled to qualified immunity on Balbin's retaliation claim because Balbin cannot satisfy either prong of the qualified immunity analysis. Even taking Plaintiff's allegations as true, the facts here still present a situation in which: (1) Balbin had not, as an inmate, engaged in constitutionally protected speech; and

---

[3] Rights are clearly established in the Eleventh Circuit pursuant to decisions of the Supreme Court, the Eleventh Circuit, or the highest court in the state. *See Thomas ex rel. Thomas v. Roberts*, 323 F.3d 950, 953 (11th Cir. 2003).

OFFICE OF COUNTY ATTORNEY, MIAMI-DADE COUNTY
TELEPHONE (305) 375-5151

(2) even if this Court were to find he had, there was no clearly established law to put Officer Johnson on notice of such a right at the time of the incident.

The district court's order denying Officer Johnson qualified immunity erred at both steps of the qualified immunity analysis and should be reversed.

### A. Officer Johnson Was Acting Within Her Discretionary Authority

It cannot reasonably be disputed that Officer Johnson was acting within her discretionary authority as a correctional officer at all relevant times. An officer acts within the scope of her discretionary authority when her conduct is undertaken pursuant to the performance of her official duties. *See Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1282 (11th Cir. 1998). Here, Balbin alleges that Officer Johnson, while working as a correctional officer at a correctional facility where he was an inmate in custody, violated his constitutional rights by improperly disposing of his personal property. Doc 1, Pg 14-15.

The question of whether conduct falls within the scope of a public employee's discretionary authority is "essentially" the question of whether that conduct is "'of a type that fell within the employee's job responsibilities,'" or "of the sort that fall[s] within the 'arsenal of powers' the official is given 'to accomplish her goals.'" *Carruth v. Bentley*, 942 F.3d 1047, 1054, 1055 (11th Cir. 2019) (quoting *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1265, 1267 (11th Cir. 2004)). An official can satisfy this inquiry "by showing 'objective circumstances which would

compel the conclusion that his actions were undertaken pursuant to the performance of his duties and within the scope of his authority.'" *Davenport*, 906 F.3d at 940 (quoting *Rich v. Dollar*, 841 F.2d 1558, 1564 (11th Cir. 1988)).

The district court erred by accepting Balbin's legal conclusion that Officer Johnson was not acting in her discretionary capacity. Doc 58, Pg 10-11. Balbin's allegations take issue with a correctional officer's disposition of inmate property, claiming that the disposal of his property was improper and retaliatory. Doc 1, Pg 14-15. This Court has explained that, to determine whether a public official was acting within the scope of their discretionary authority, it asks "1) whether the official was performing a function that, 'but for the alleged constitutional infirmity,' would have fallen within his 'legitimate job description'; and (2) whether that function was carried out 'through means that were within his power to utilize.'" *Howard v. Gee*, 538 F. App'x 884, 887 (11th Cir. 2013) (quoting *Harland*, 370 F.3d at 1265-66). The district court adopted Balbin's conclusion without engaging in this analysis. Doc 58, Pg 10-11.

As a correctional officer, part of Officer Johnson's job was to supervise inmates and maintain jail security. *See Howard*, 538 F. App'x at 887. Subsumed within the responsibility to maintain jail security is the discretionary authority to conduct searches of inmates and eliminate, or at least minimize, the presence of contraband in the correctional environment. *See Moton v. Walker*, 545 F. App'x 856,

859 (11th Cir. 2013) ("Under Florida law, prison authorities may conduct strip searches, including a visual inspection of the inmate's rectum, when inmates arrive, after inmates have contact with the public, after inmates attempt an escape, and at any time when they are suspected of carrying contraband.") (internal quotation marks and citation omitted); *see also Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984) ("[P]rison administrators are to take all necessary steps to ensure the safety of not only the prison staffs and administrative personnel, but also visitors. . . . In addition to these monumental tasks, it is incumbent upon these officials at the same time to maintain as sanitary an environment for the inmates as feasible.").

The district court erred in concluding that Officer Johnson was not acting within her discretionary authority as a correctional officer when she disposed of an inmate's personal property, noting it was "unpersuaded" that Officer Johnson's "discretionary duties as a correctional officer included throwing out Plaintiff's legal and personal materials *as alleged in the Complaint*." Doc 58, Pg 10-11 (emphasis added). In essentially holding that Officer Johnson lacked the discretionary authority to dispose of inmate property *improperly*, the district court's logic fell prey to the "untenable tautology" against which this Court has explicitly cautioned:

> One might reasonably believe that violating someone's constitutional rights is never a legitimate job-related function or within the scope of a government official's authority or power. As we explained in *Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1282 (11th Cir. 1998) (quotation marks and citation omitted), however, "the inquiry is not whether it was within the defendant's authority to commit the allegedly illegal act.

> **Framed that way, the inquiry is no more than an untenable tautology.**" In applying each prong of this test, we look to the general nature of the defendant's action, <u>temporarily putting aside the fact that it may have been committed for an unconstitutional purpose, in an unconstitutional manner, to an unconstitutional extent, or under constitutionally inappropriate circumstances</u>.

*Harland*, 370 F.3d at 1266 (emphasis added).

The district court failed to follow *Harland* and erred when it adopted Balbin's legal conclusion that an on-duty correctional officer working in a correctional facility was not acting within her discretionary capacity when she disposed of an inmate's property. On these grounds, too, the district court's order should be reversed.

## B. Because Plaintiff Did Not Engage in Constitutionally Protected Speech, Plaintiff Cannot Establish a Constitutional Violation

"To state a retaliation claim, the commonly accepted formulation requires that a plaintiff must establish **first, that his speech or act was constitutionally protected**; second, that the defendant's retaliatory conduct adversely affected the protected speech; and third, that there is a causal connection between the retaliatory actions and the adverse effect on speech." *Bennett v. Hendrix*, 423 F.3d 1247, 1250 (11th Cir. 2005) (emphasis added). A plaintiff's complaint must contain enough facts to state a claim of retaliation by prison officials that is "plausible on its face." *Twombly*, 550 U.S. at 570.

13

Plaintiff fails to state a claim for retaliation—to establish that a constitutional violation occurred—because he cannot show that he engaged in "constitutionally protected" speech for which he experienced retaliatory conduct. "[A]n inmate is considered to be exercising his First Amendment right of freedom of speech when he complains to the prison's administrators about the conditions of his confinement." *Smith v. Mosley*, 532 F.3d 1270, 1276 (11th Cir. 2008). Here, however, Balbin alleged no such activity. Instead, Balbin alleged that Officer Johnson violated his federal constitutional rights by throwing away his personal property in retaliation for Balbin "beating" a criminal charge against him. Doc 1, Pg 14-15. Even accepting Plaintiff's allegations as true, his allegations do not establish that he engaged in constitutionally protected activity, and he therefore cannot satisfy the first prong of a retaliation claim. *See Moulds v. Bullard*, 345 F. App'x 387, 394 (11th Cir. 2009).

The gravity of the district court's error in allowing an inmate to state a claim for retaliation in the absence of constitutionally protected activity cannot be minimized. Several sister circuits have recognized "both the near inevitability of decisions and actions by prison officials to which prisoners will take exception and the ease with which claims of retaliation may be fabricated" and, as a result, have stressed the need to "examine prisoners' claims of retaliation with skepticism and particular care." *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995); *see also Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir. 1995) ("To assure that prisoners do not

inappropriately insulate themselves from disciplinary actions by drawing the shield of retaliation around them, trial courts must carefully scrutinize these claims."); *Adams v. Rice*, 40 F.3d 72, 74 (4th Cir. 1994) ("Claims of retaliation must therefore be regarded with skepticism, lest federal courts embroil themselves in every disciplinary act that occurs in state penal institutions."); *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983) ("[C]laims by prisoners that particular administrative decisions have been made for retaliatory purposes are prone to abuse. . . . If full discovery were to be permitted on every such claim, the result would indeed be chaotic.").

　　As the Second Circuit has aptly noted, inmates' claims of retaliation must be viewed with particular care because "virtually any adverse action taken against a prisoner by a prison official—even those otherwise not rising to the level of a constitutional violation—can be characterized as a constitutionally proscribed retaliatory act." *Dawes v. Walker*, 239 F.3d 489, 491 (2d Cir. 2001). This is no less true here, where Balbin has accepted to shoehorn what is, at best, a state law claim for unlawful conversion of property claim into a federal retaliation claim against an individual officer. *See Hudson*, 468 U.S. at 536 (holding that "even if petitioner intentionally destroyed respondent's personal property during the challenged shakedown search, the destruction did not violate the Fourteenth Amendment" where an adequate post-deprivation remedy exists).

"Section 1983 is not a font of tort law that converts every state law tort claim into a federal cause of action." *Echols v. Lawton*, 913 F.3d 1313, 1326 (11th Cir. 2019) (cleaned up). "When a plaintiff complains that a public official has violated the Constitution, qualified immunity shields the official from individual liability unless he had fair notice that his alleged conduct would violate 'the supreme Law of the Land.'" *Id.* This does not necessarily leave an individual without recourse, but it does mean plaintiffs must accept the ramifications of the avenue they have chosen:

> [T]he Constitution does not provide the only standard for redress for those wronged by public officials. For example, Lawton's alleged conduct could have been reviewed and sanctioned by the State Bar. ***Echols could have also filed a claim under state tort law against Lawton. But Echols chose to frame his complaint as a federal case alleging a violation of the Constitution, 42 U.S.C. § 1983.***

*Id.* at 1325-26 (emphasis added; citations omitted).

Here, the district court's error—its unprecedented finding that an inmate's criminal plea satisfies the "constitutionally protected activity" required by the first prong of a retaliation claim—invites inmates to shoehorn almost any adverse action into a federal constitutional claim by alleging that it was retaliatory in nature.

1. **An Inmate's Criminal Plea Is Not Constitutionally Protected Speech That Can Form The Basis of a First Amendment Retaliation Claim**

In his Complaint, Balbin alleges that Officer Johnson's "retaliatory" disposal of his personal property was in response to Balbin "beating" a criminal charge. Doc 1, Pg 14-15. In her motion to dismiss before the district court, Officer Johnson noted

that a prosecutor's decision to drop a criminal action—Balbin's criminal case had resulted in a *nolle prosequi*—could not be speech attributable to Balbin himself. Doc 37, Pg 8. Balbin responded that he had engaged in "constitutionally protected" speech by pleading not guilty in the criminal action. Doc 54, Pg 3-4. The district court accepted Balbin's argument, finding Balbin's claim that he "invoked his right to plead not guilty and challenged charges brought against him . . . sufficiently alleges acts of constitutionally protected speech under the First Amendment." Doc 58, Pg 7-8.

"The inquiry into the protected status of speech is one of law, not fact." *Connick v. Myers*, 461 U.S. 138, 148 n.7 (1983); *see also Alves v. Bd. Of Regents of the Univ. Sys. Of Georgia*, 804 F.3d 1149, 1159 (11th Cir. 2015) (whether a public employee's speech is constitutionally protected is a "question[] of law for the court to resolve"); *Carter v. Allen*, 762 F. App'x 827, 833 (11th Cir. 2019) ("[I]t is a question of law whether, given a set of facts, a person has engaged in constitutionally protected speech.").

Balbin did not engage in constitutionally protected activity by entering a "not guilty" plea in his criminal action. The proscription on retaliatory conduct is meant to protect an individual's exercise of free speech rights and prevent state officials from taking action that would chill a person's speech. *See Boxer X v. Harris*, 437 F.3d 1107, 1112 (11th Cir. 2006) ("First Amendment rights to free speech and to

OFFICE OF COUNTY ATTORNEY, MIAMI-DADE COUNTY
TELEPHONE (305) 375-5151

petition the government for a redress of grievances are violated when a prisoner is punished for filing a grievance concerning the conditions of his imprisonment."). But Balbin's entry of a "not guilty" plea in his criminal action was not *initiated* by him; he was compelled to enter a plea, whether guilty or not guilty, in response to the criminal charge filed against him. *See Hannan v. City of Philadelphia*, 306 F. App'x 735, 738 (3d Cir. 2009) ("[H]is compelled plea does not fall within the constitutional protections for petitions to the government."). It necessarily follows that the concerns regarding chilled speech—the concerns motivating the proscription on retaliatory conduct—are not implicated for compelled speech.

The Third Circuit has considered the question of whether entering a criminal plea constitutes protected activity under the First Amendment—and has answered the question in the negative. In *Hannan*, the Third Circuit rejected a plaintiff's claim that he had engaged in protected activity, for the purposes of a retaliation claim, "because he pleaded 'not guilty' and opted to challenge the charges against him" brought by a police board of inquiry:

> Pleading not guilty to a PBI charge cannot, as a matter of law, constitute a petition for redress of grievances under the First Amendment. To gain protection under the Petition Clause, the action must be initiated by the citizen. Here, Hannan's plea was made under government compulsion, which is inconsistent with the basic principle of freedom underlying the Petition Clause.

306 F. App'x at 738. *Hannan* is particularly instructive because it correctly engaged in the two-step qualified immunity inquiry the district court failed to perform,

18

concluding that the plaintiff's retaliation claim failed not only at step one, given the plaintiff's failure to "establish that the conduct which triggered his retaliatory discharge was protected under the First Amendment," but also at step two, because "[e]ven if pleading not guilty in a PBI proceeding constituted protected petition activity, we cannot say that the law is clearly established on that point." *Id.*

In addition to the Third Circuit, several district courts have rejected inmates' attempts to bring retaliation claims similar to the one alleged here, where adverse action is claimed to be "retaliatory" in response to the plaintiff being found not guilty of a criminal charge. *See Miller v. Lucas*, No. 3:16-CV-01947, 2018 WL 4441534, at *4 (M.D. Pa. July 20, 2018), *report and recommendation adopted*, No. 3:16-CV-1947, 2018 WL 4404675 (M.D. Pa. Sept. 17, 2018) ("Being found not guilty of a misconduct charge is not conduct protected by the First Amendment."); *Taylor v. Fischer*, 841 F. Supp. 2d 734, 737 (W.D.N.Y. 2012) ("Being found not guilty, however, is not protected activity, or for that matter, 'activity' at all, on plaintiff's part."); *Davis v. Jackson*,  No. 15-CV-5359 (KMK), 2018 WL 358089, at *11 (S.D.N.Y. Jan. 8, 2018) (citing same); *Bristol v. Queens Cnty.*, No. CV095544JFBAKT, 2018 WL 5077166, at *16 (E.D.N.Y. Mar. 30, 2018), *report and recommendation adopted*, No. 09CV5544JMAAKT, 2018 WL 4328828 (E.D.N.Y. Sept. 11, 2018) ("Here, Plaintiff has alleged that his last transfer to Rikers Island was in retaliation for the dismissal of the 34-count indictment against him—

not in retaliation for his exercise of a constitutionally protected right, such as freedom of speech or religion."); *Jones v. Nichols*, No. 12CV1039 BTM BLM, 2014 WL 5171541, at *4 (S.D. Cal. Oct. 14, 2014) (dismissing retaliation claim where plaintiff alleged he was retaliated against because he was found "not guilty" for a disciplinary violation). The district court's holding in *Jones* was affirmed by the Ninth Circuit, which expressly noted that "[t]he district court properly dismissed Jones's retaliation claim because Jones failed to allege facts sufficient to show that he was engaged in protected conduct." *Jones v. Nichols*, 639 F. App'x 433, 434 (9th Cir. 2016). Moreover, *Miller*, like *Hannan*, expressly rejected the contention that the entry of a criminal plea is constitutionally protected activity under the First Amendment. *See Miller*, 2018 WL 4441534, at *4 ("Nor does defending oneself against misconduct charges constitute protected activity.").

In short, many courts have considered—and rejected—attempts to base retaliation claims on "beating" criminal charges or entering "not guilty" pleas. Neither Plaintiff nor the district court, however, identified one instance where a court allowed such a claim to survive. Balbin's entry of a "not guilty" plea does not satisfy the requisite constitutionally protected speech required by the first prong of a retaliation claim. As a result, Balbin "was 'not engaged in protected conduct, and [he] cannot proceed beyond step one' of the [retaliation] analysis." *Moulds*, 345 F.

App'x at 394 (first alteration in original) (quoting *Smith*, 532 F.3d at 1277). Balbin did not state a claim for retaliation, and the district court erred in finding otherwise.

### C. Plaintiff Cannot Overcome Officer Johnson's Entitlement to Qualified Immunity Because Plaintiff Cannot Show a Right That Was Clearly Established at the Time

In order to overcome Officer Johnson's entitlement to qualified immunity, Balbin must "establish both that the officer's conduct violated a constitutionally protected right <u>and</u> that the right was clearly established at the time of the misconduct." *Alcocer*, 906 F.3d at 951 (emphasis added) (citing *Pearson*, 555 U.S. at 232).

Since 2009, the Supreme Court has recognized that district courts may, and occasionally should, conduct the inquiry in reverse order—that is, the Court should, before determining whether a constitutional violation occurred, proceed directly to asking whether the alleged acts violated clearly established law. *See Pearson*, 555 U.S. at 239 ("[T]here will be cases in which a court will rather quickly and easily decide that there was no violation of ***clearly established law*** before turning to the more difficult question whether the relevant facts make out a constitutional question at all.") (emphasis added). Such an approach is especially called for when a court would otherwise conduct an analysis to determine whether a constitutional violation occurred, only to find that, naturally, such a right was not clearly established if the court had to determine it existed. "There are cases in which it is plain that a

constitutional right is not clearly established but far from obvious whether in fact

there is such a right. District courts and courts of appeals with heavy caseloads are

often understandably unenthusiastic about what may seem to be an essentially

academic exercise." *Id.* at 237.

> This Court applied this principle in *Lewis v. City of West Palm Beach*:

> The Supreme Court recognized that discussion of a constitutional violation may become unnecessary for qualified immunity purposes when the right was not clearly established. It is therefore not mandated that the Court examine the potential constitutional violation under *Saucier* step one prior to analyzing whether the right was clearly established under step two. Such analytical flexibility is certainly applicable here. Even if the officers' actions violated Lewis's Fourth Amendment rights, the appellant did not demonstrate that the officers' conduct was an intrusion on a clearly established right.

561 F.3d 1288, 1291-92 (11th Cir. 2009) (internal citations omitted).

The Supreme Court has recently continued to endorse this approach,

encouraging lower courts to "grant qualified immunity on the ground that a

purported right was not 'clearly established' by prior case law, without resolving the

often more difficult question whether the purported right exists at all." *Reichle v.

Howards*, 566 U.S. 658, 664 (2012); *see also District of Columbia v. Wesby*, 138 S.

Ct. 577, 589 n.7 (2018) ("We continue to stress that lower courts should think hard,

and then think hard again, before addressing both [the clearly established law

analysis] and the merits of an underlying constitutional claim.").

Balbin's inability to meet his burden to prove that any law clearly established Officer Johnson's conduct violated the Constitution makes this case a prime candidate for second-step-first treatment. While the Court could perform an "essentially academic exercise" and analyze whether Balbin has alleged a constitutional violation, such an exercise would ultimately be futile, as the very exercise conclusively demonstrates that Plaintiff's claims fail to satisfy the second prong, and Officer Johnson is entitled to qualified immunity because the right is obviously not clearly established. "'[I]f case law, in factual terms, has not staked out a bright line, qualified immunity almost always protects the defendant.'" *Corbitt v. Vickers*, 929 F.3d 1304, 1312 (11th Cir. 2019) (quoting *Oliver v. Fiorino*, 586 F.3d 898, 907 (11th Cir. 2009)).

"[W]e have emphasized that fair and clear notice to government officials is the cornerstone of qualified immunity." *Moore v. Pederson*, 806 F.3d 1036, 1052 (11th Cir. 2015) (internal quotation marks and citations omitted) (affirming grant of qualified immunity to officer that committed constitutional violation where that constitutional violation had not been previously clearly established). "'For a right to be clearly established, previous case law must have developed it in a concrete factual context so as to make it obvious to a reasonable government actor that his actions violate federal law.'" *Hadley v. Gutierrez*, 526 F.3d 1324, 1333 (11th Cir. 2008)

(quoting *GJR Investments, Inc. v. County of Escambia, Fla.*, 132 F.3d 1359, 1366 (11th Cir. 1998)).

"Plaintiffs may not discharge their burden by referring to general rules and abstract rights." *Moore*, 806 F.3d at 1057 (Proctor, J., concurring). The case law on which a plaintiff seeks to rely "'must ordinarily have been earlier developed in such a concrete and factually defined context to make it obvious to all reasonable government actors, in the defendant's place, that what he is doing violates a federal law.'" *Melton v. Abston*, 841 F.3d 1207, 1221 (11th Cir. 2016) (quoting *Priester v. City of Riviera Beach*, 208 F.3d 919, 926 (11th Cir. 2000)).

To determine whether the plaintiff has shown that concrete development in the case law, "the district court should compare the facts of the case before the court that allege a constitutional deprivation with those cases that the party opposing the motion contends show the clearly established nature of the law." *Merricks v. Adkisson*, 785 F.3d 553, 559 (11th Cir. 2015). If the case before the court and the previous case are "fairly distinguishable," the previous case cannot clearly establish the law for qualified immunity purposes, *Gaines v. Wardynski*, 871 F.3d 1203, 1209 (11th Cir. 2017) (citation omitted), for though the facts of the identified case need not be identical, "the unlawfulness of the conduct must be apparent," *Coffin v. Brandau*, 642 F.3d 999, 1013 (11th Cir. 2011).

Plaintiff cannot establish that Officer Johnson violated a clearly established

right here. As this Court has explained:

> Under this Court's precedent, a right can be clearly established in one
> of three ways. [Plaintiff] must point to either (1) case law with
> indistinguishable facts, (2) a broad statement of principle within the
> Constitution, statute, or case law, or (3) conduct so egregious that a
> constitutional right was clearly violated, even in the total absence of
> case law. Although we have recognized that options two and three can
> suffice, the Supreme Court has warned us not to define clearly
> established law at a high level of generality. **For that reason, the
> second and third paths are rarely-trod ones.**

*Crocker v. Beatty*, 995 F.3d 1232, 1240 (11th Cir. 2021), *cert. denied*, 142 S. Ct. 845

(2022) (emphasis added; internal quotation marks and citations omitted).

Unsurprisingly, neither Balbin nor the district court could identify any case

law with indistinguishable facts. *See Vann v. City of Southaven, Mississippi*,

884 F.3d 307, 310 (5th Cir. 2018) (stating that "[i]t is the plaintiff's burden to find"

the relevant precedent). In other words, Plaintiff did not provide any applicable case

law holding an officer individually liable for retaliation under 42 U.S.C. section

1983 on the basis that an inmate engaged in constitutionally protected speech by

virtue of their plea in a criminal action. Doc 54. The district court's order, too, is

similarly devoid of any caselaw from the relevant legal landscape establishing that

the entry of a not guilty plea in a criminal action satisfies the first prong of a federal

retaliation claim. Doc 58, Pg 10-11. And at least one circuit, and several district

courts, have held otherwise. *See, e.g.*, *Hannan*, 306 F. App'x at 738.

This Court has repeatedly recognized that the decisions of other courts can be instructive on questions of qualified immunity, as disagreement among them can belie a plaintiff's assertion that such a right is "clearly established":

> This means that in the absence of caselaw on this point from the Supreme Court, the Eleventh Circuit, and the Florida Supreme Court, at best, disagreement among other circuits existed. . . . If judges disagree on a constitutional question, it is unfair to subject police to money damages for picking the losing side of the controversy.

*Moore*, 806 F.3d at 1048 (internal quotation marks and citation omitted); *see also Echols*, 913 F.3d at 1325 ("In the absence of controlling precedent, cases decided outside this Circuit can buttress our view that the applicable law was not already clearly established because we must not hold officials to a higher standard of legal knowledge than that displayed by the federal courts in reasonable and reasoned decisions.") (cleaned up).

The district court found Balbin had satisfied the second prong of the qualified immunity analysis "by pointing to a 'broader, clearly established principle.'" Doc 58, Pg 14. The district court's order seemed to indicate that this "broader, clearly established principle" was that Officer Johnson's conduct "violated the constitution because it served no other penological purpose than to punish the Plaintiff for exercising his protected speech by challenging charges she lodged against him." *Id.* But the Supreme Court has already rejected a "clearly established" right against retaliation at such a high level of abstraction:

OFFICE OF COUNTY ATTORNEY, MIAMI-DADE COUNTY
TELEPHONE (305) 375-5151

> Howards contends that our cases have settled the rule that, as a general matter, the First Amendment prohibits government officials from subjecting an individual to retaliatory actions for his speech. But we have previously explained that the right allegedly violated must be established, not as a broad general proposition, but in a particularized sense so that the contours of the right are clear to a reasonable official.

*Reichle v. Howards*, 566 U.S. 658, 665 (2012) (cleaned up); *see also Echols*, 913 F.3d at 1325 (recognizing same).

And the Supreme Court has recently "reiterate[d] the longstanding principle that 'clearly established law' should not be defined 'at a high level of generality,'" *White v. Pauly*, 137 S. Ct. 548, 552 (2017), "repeatedly stress[ing] that courts must not 'define clearly established law at a high level of generality, since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced.'" *D.C. v. Wesby*, 138 S. Ct. 577, 590 (2018) (citation omitted).

The district court failed to heed these warnings. As a result, it erred in finding that Balbin had satisfied the clearly established prong of the qualified immunity inquiry. "[D]istrict courts are obliged to analyze carefully whether preexisting law dictates, that is, truly compels, the conclusion for all reasonable, similarly situated public officials that what Defendant was doing violated Plaintiffs' federal rights in the circumstances." *Wade v. United States*, 13 F.4th 1217, 1229-30 (11th Cir. 2021), *cert. denied sub nom. Wade v. Lewis*, 142 S. Ct. 1419 (2022) (internal quotation

marks and citation omitted). Here, as in *Wade*, "the district court failed to undertake this careful analysis." *Id.* at 1230.

The district court erred in finding that Balbin had stated a claim for retaliation where his alleged constitutionally protected activity was pleading "not guilty" and "beating" a criminal charge. The district court further erred in finding that Balbin had demonstrated such a right was clearly established. Even taking Balbin's allegations as true, they do not overcome Officer Johnson's entitlement to qualified immunity. The district court's order denying qualified immunity should be reversed.

## Conclusion

In November 2020, it was not clearly established that an inmate engaged in protected speech by entering a not guilty plea in a criminal action. Several courts have rejected the idea that a criminal plea—compelled speech—can satisfy the first prong of a retaliation claim. The district court's order erred by finding otherwise and by denying qualified immunity to Officer Alexis Johnson, and it should be reversed. Balbin's First Amendment retaliation claim against Officer Alexis Johnson should be dismissed based on qualified immunity.

OFFICE OF COUNTY ATTORNEY, MIAMI-DADE COUNTY
TELEPHONE (305) 375-5151

Respectfully submitted,

GERALDINE BONZON-KEENAN
Miami-Dade County Attorney
Stephen P. Clark Center
111 N.W. 1st Street, Suite 2810
Miami, Florida 33128
Phone: (305) 375-5151

By:     *s/ Anita Viciana*
Anita Viciana
Florida Bar No. 115838
Assistant County Attorney
*Attorney for Defendant-Appellant*
*Officer Alexis Johnson*

## Certificate of Compliance

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5)

and the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it has been

prepared in a proportionally based typeface using Microsoft Word, 14-point Times

New Roman, and because, excluding the parts of the document exempted by Fed. R.

App. P. 32(f), this document contains 6,237 words.

*s/ Anita Viciana*
Anita Viciana
Assistant County Attorney

## Certificate of Service

I hereby certify that on June 21, 2022, a true and correct copy of the foregoing document was electronically filed via ECF and four paper copies were mailed to the Clerk, U.S. Court of Appeals for the 11th Circuit, 56 Forsyth St., N.W., Atlanta, Georgia 30303, via U.S. Mail. I further certify that an additional paper copy was served on Plaintiff-Appellee Manuel Balbin, who is incarcerated and *pro se*, via U.S. Mail to the following address:

> Manuel Balbin, FDC #B05748
> Okeechobee Correctional Institution
> Inmate Mail/Parcels
> 3420 NE 168th Street
> Okeechobee, FL 34972

> *s/ Anita Viciana*
> Anita Viciana
> Assistant County Attorney

OFFICE OF COUNTY ATTORNEY, MIAMI-DADE COUNTY
TELEPHONE (305) 375-5151